758 F.2d 1325
 1988 A.M.C. 2703
 PACIFIC ATLANTIC TRADING CO., INC., a corporation, Plaintiff,
v.
The M/V MAIN EXPRESS, her engines, tackle, machinery and
equipment; Hapag- Lloyd Aktiengeselleschaft, a
corporation, Defendants/Third-Party-
Plaintiffs/Appellees,
and
C.F. Merchant Sdn. Bhd. and Kwong Yik Bank, Bhd.,
Third-Party/Defendants- Appellants.
 No. 84-1719.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1985.
Decided April 22, 1985.
 
 James R. Nebel, Graham & James, San Francisco, Cal., for defendants/third-party-plaintiffs/appellees.
 John E. Droeger, Beverly D. Clement, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for third-party/defendants-appellants.
 Appeal from the United States Court for the Northern District of California.
 Before KENNEDY, ALARCON and NELSON, Circuit Judges.
 NELSON, Circuit Judge.
 
 
 1
 C.F. Merchant Sdn. Bhd. ("Merchant") and Kwong Yik Bank, Bhd. ("Bank") appeal from a district court order denying a motion to vacate a default judgment for lack of personal jurisdiction. Merchant and Bank were named as third-party defendants in an action by Pacific Atlantic Trading Co. ("PATCO") against Hapag-Lloyd Aktiengeselleschaft ("Hapag") based on admiralty and maritime jurisdiction under 28 U.S.C. Sec. 1333(1) (1982). A default judgment was entered against them when they failed to appear. We reverse and remand with instructions to set aside the default judgment as void for lack of personal jurisdiction.
 
 I. BACKGROUND
 
 2
 Hapag, a West German common carrier operating between Long Beach, California and Port Kelang, Malaysia, carried a shipment of root beer to Port Kelang for PATCO, a corporation with its principal place of business in San Francisco, California. Since Merchant was named as the party to be notified on the bill of lading, Hapag contacted Merchant on arrival. Merchant had expected to receive endorsed bills of lading from PATCO as a partial settlement, negotiated in San Francisco, of a previous unpaid debt for services Merchant performed for PATCO in Malaysia. There is some conflict in the affidavits as to whether Merchant's representatives visited San Francisco to solicit business or were invited by PATCO. The district court left the conflict unresolved as irrelevant to its decision.
 
 
 3
 When Hapag refused to surrender the cargo without the bills of lading, Merchant and Bank co-signed a letter of guarantee indemnifying Hapag against any losses resulting from the delivery. PATCO never endorsed the bills of lading to Merchant, and sold the goods to another party. When PATCO brought suit in the United States District Court in San Francisco against Hapag for conversion, Hapag filed a third-party complaint against Merchant and Bank under the indemnity agreement. PATCO and Hapag settled the underlying claim, but Merchant and Bank failed to answer the third-party complaint. After a default judgment was entered against them, Merchant and Bank unsuccessfully moved to vacate the judgment on the basis of lack of personal jurisdiction. In their timely appeal, they contend that the district court erred in exercising limited jurisdiction over them.
 
 II. DISCUSSION
 A. Standard of Review
 
 4
 A district court's determination that personal jurisdiction can be properly exercised is a question of law, reviewable de novo when the underlying facts are undisputed. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). In an unpublished memorandum decision, the district court based its finding of limited jurisdiction on the execution of the indemnity agreement alone, leaving unresolved the disputed facts in the affidavit. In Data Disc., Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280 (9th Cir.1977), this Circuit formulated a standard for reviewing conflicting affidavits when the district judge makes no findings of fact. Id. at 1283. The court concluded that since there is no basis upon which a district judge can resolve disputed issues in affidavits unless the facts are inherently incredible, the plaintiff need only establish a prima facie case to support a finding of personal jurisdiction. Id. at 1285 & n. 2. The Seventh Circuit has extended this standard by resolving all factual disputes in the plaintiff's favor. Neiman v. Rudolf Wolff & Co., 619 F.2d 1189, 1190 (7th Cir.) cert. denied, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).
 
 B. Analysis of Limited Jurisdiction
 
 5
 In a suit that arises under the district court's admiralty jurisdiction, the due process clause of the fifth amendment determines whether the court has personal jurisdiction over the defendant. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 283 (3d Cir.), cert. denied, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). In addition, the state long-arm statute must be applied to determine the defendant's amenability to suit in the forum. Id.
 
 
 6
 The applicable California jurisdictional statute, Cal.Civ.Proc.Code Sec. 410.10 (West 1973), states that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The jurisdiction of the California state courts has therefore been construed to be "coextensive with the outer limits of due process ... as ... defined by the United States Supreme Court." Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir.), cert. denied, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974); see also Sibley v. Superior Court, 16 Cal.3d 442, 446, 128 Cal.Rptr. 34, 546 P.2d 322, cert. denied, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). As a result, jurisdictional inquiries under the state statute and due process principles can be conducted as a single analysis. Forsythe v. Overmyer, 576 F.2d 779, 782 (9th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).
 
 
 7
 To exercise personal jurisdiction over a nonresident defendant, "due process requires ... certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) ). If the nonresident defendant's activities in the forum are sufficiently substantial and continuous, general jurisdiction will lie even if the cause of action is not related to the defendant's activities in the state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952); Olsen By Sheldon v. Government of Mexico, 729 F.2d 641, 648 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). But if the defendant's activities are not sufficiently pervasive to support general jurisdiction, the nature and quality of the forum-related activities must be evaluated in relation to the specific cause of action. Olsen, 729 F.2d at 648.
 
 
 8
 Hapag conceded that the district court could not exercise general jurisdiction over Merchant and Bank since they do not have sufficient minimum contacts with California. Therefore, the district court's order should be reviewed on the basis of whether limited jurisdiction was properly established.
 
 
 9
 Our circuit has adopted the following three-pronged approach to analyzing limited jurisdiction:
 
 
 10
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.
 
 
 11
 Data Disc, Inc., 557 F.2d at 1287.
 
 
 12
 Since questions of personal jurisdiction "must be decided on a case-by-case basis," Forsythe, 576 F.2d at 783, each factor will be analyzed separately in the context of the facts of the instant case.
 
 1. Purposeful Availment
 
 13
 The district court found that the execution of the indemnity agreement constituted a purposeful availment of the benefits and protections of California laws, citing Forsythe, 576 F.2d at 782-83. However, Forsythe is clearly distinguishable from the facts in the present case. The defendant, Overmyer, personally guaranteed his corporation's obligations in a contract with the plaintiff as a condition of completing a sale-lease agreement expressly subject to jurisdiction in California. Id. at 783. In contrast, the indemnity agreement between Merchant and Hapag was executed as a separate transaction in Malaysia, and played no part in the negotiation of the agreement between PATCO and Merchant.
 
 
 14
 In addition, the Forsythe court clearly did not base its finding of jurisdiction solely on the indemnity agreement. Overmyer had previously issued personal guarantees to ten other California residents as part of a negotiating package for his corporation. Overmyer met personally with California brokers several times in connection with these sale and lease-back contracts. The court noted that "this dispute does not arise from a single isolated transaction." Id. at 783 n. 6. Thus, the district court's reliance on Forsythe is unconvincing regarding not only Bank, which had no contacts of any kind with California, but also Merchant, whose contacts were much more limited than Overmyer's even from the most liberal reading of the affidavits.
 
 
 15
 A 1980 decision of the California Supreme Court interpreting the state long-arm statute is illustrative of the distinction between Merchant and Bank and Overmyer. In Sibley v. Superior Court, 16 Cal.3d 442, 128 Cal.Rptr. 34, 546 P.2d 322 cert. denied, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976), a California partnership sued a Florida resident who had guaranteed the performance of a Georgia corporation. The court held it could not constitutionally assert jurisdiction over a nonresident solely because he executed a guarantee agreement regarding payment of money owing to a California corporation. Even though the guarantor could have anticipated that the failure of the Georgia corporation's performance would have an effect in California, and even though the issuance of the guarantee may have influenced the California corporation to enter the agreement, "the mere causing of an 'effect' in California ... is not necessarily sufficient to afford a constitutional basis for jurisdiction" if it is "unreasonable" in the absence of sufficient contacts with the forum. Id. at 446, 128 Cal.Rptr. 34, 546 P.2d 322. Similarly, even though Merchant and Bank could have anticipated that Hapag would be sued for delivery of the goods without receiving the bills of lading, and even though the indemnity agreement induced Hapag to deliver the goods, absent sufficient contacts between the appellants and the California forum, the indemnity agreement is not in and of itself dispositive of the jurisdictional issue.
 
 
 16
 Furthermore, Hapag has not explained how Merchant and Bank could avail themselves of the protection of California laws as a result of becoming Hapag's indemnitors. The record does not indicate that Hapag assumed any obligations to Merchant or Bank that they might have sought to enforce in California. Cf. Wyle v. Bank Melli, 577 F.Supp. 1148 (N.D.Cal.1983) (Iranian bank's reliance on letter of credit from California bank to secure an indemnity agreement constituted purposeful availment of the benefits of California law).
 
 
 17
 The district court further concludes that Merchant realized a direct benefit from the indemnity contract by receiving the root beer shipment, and that Bank realized an indirect benefit from the consideration it presumably received. But the receipt of the goods from Hapag, originally negotiated as a repayment by PATCO for services rendered in Malaysia, does not support the conclusion that Merchant invoked the benefits of California laws. In a state appellate court case in which a Turkish bank reimbursed itself for a guarantee transaction from its long-term correspondent bank in California, the court held that "[t]he mere fact that a nonresident defendant receives income from California in payment for services rendered elsewhere does not provide a basis for jurisdiction in this state." Thomas J. Palmer, Inc. v. Turkiye Is Bankasi, 105 Cal.App.3d 135, 154, 164 Cal.Rptr. 181 (1980).
 
 
 18
 Finally, the district court found that as a result of appellants' purposeful availment of the California forum, they met the "ultimate test" of being able to "reasonably anticipate being haled into court" in California. The characterization of foreseeability of foreign suit as the "ultimate test" is incorrect. Our Circuit recognizes that "foreseeability alone is never sufficient to establish personal jurisdiction." Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp., 633 F.2d 155, 159 (9th Cir.1980) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295-96, 100 S.Ct. 559, 566-67, 62 L.Ed.2d 490 (1980) ). While it is not unlikely that Merchant and Bank could have anticipated PATCO's filing suit against Hapag, there is no basis to assume that they anticipated that California would be the forum to settle a dispute regarding the indemnity agreement signed in Malaysia for a West German cargo vessel operator that routinely traveled to Port Kelang.
 
 2. Forum-Related Activities
 
 19
 The district court concluded that Hapag's claim "arises from the indemnity agreement that is related to the California forum." It is true that Hapag's claim is a link in the chain of events culminating in the current appeal. However, our Circuit has not interpreted this criterion so broadly. In Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247 (9th Cir.1980), the court concluded that the fact that the defendant regularly entered into sale and purchase agreements with a California resident, made payments in California, frequently contacted the plaintiff, and visited California to complete two prior transactions did not subject the defendant to long-arm jurisdiction in a dispute regarding a new sale and purchase agreement. The court explained: "We find the crucial fact to be that [the] visit pertained to transactions not at issue in this case." Id. at 1254. Analogizing to Hapag's case, the fact that Merchant visited PATCO in San Francisco or had prior dealings with PATCO would only be relevant to the question of limited jurisdiction in a lawsuit by PATCO against Merchant on a specific transaction. Pursuant to Thos. P. Gonzalez Corp., the contract between Hapag and Merchant/Bank is a separate transaction from the previous Merchant/PATCO agreement. Although Merchant's other activities in California would be relevant to an assertion of general jurisdiction, Hapag has already conceded that no general jurisdiction can be justified.
 
 3. Reasonableness
 
 20
 The three Data Disc conditions are conjunctive requirements for asserting jurisdiction. Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir.1981) (hereinafter cited as I.N.A.). Therefore, even if we had found that the first two conditions were satisfied, we would still have to determine that the exercise of jurisdiction is reasonable. In I.N.A., this court identified seven factors as pertinent to the determination of reasonableness. Id. at 1270. Each factor will be considered and balanced into the reasonableness inquiry.
 
 
 21
 a. Extent of Purposeful Interjection
 
 
 22
 Neither Merchant nor Bank maintains offices, employees, agents, or property in California. Bank has never sent any representatives to California. Merchant has allegedly sent representatives on one occasion to confer with PATCO regarding future transactions. Merchant and Bank did not interject any products or services into California by indemnifying Hapag. Our Circuit has generally required a higher showing of contacts with the forum to support limited jurisdiction. For example, in Commercial Insurance Co. v. Pacific-Peru Construction Corp., 558 F.2d 948 (9th Cir.1977), this court found there were insufficient contacts related to the cause of action to confer jurisdiction over a New York insurance company even though the company sent attorneys to Hawaii to collect collateral security under an indemnity agreement and sent letters to attempt the collection of monies due under the agreement. Id. at 955.
 
 
 23
 Even if we accept the district court's assertion that one purposeful act with effects in the forum state[1] justifies the exercise of jurisdiction, our Circuit has noted that the "foreign-acts-with-forum-effects jurisdictional principle 'must be applied with caution, particularly in an international context.' " Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1178 (9th Cir.), cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980) (quoting Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir.1972) ).
 
 
 24
 b. Burden of Defense
 
 
 25
 The burden of defending in California appears considerable for the appellants. The distance between California and Malaysia is substantial, and potential witnesses to the execution of the indemnity contract are most likely in Port Kelang. Bank and Merchant do not appear to travel regularly between California and Malaysia, as does Hapag.
 
 
 26
 In addition, our Circuit has noted that in personal jurisdiction cases, the burden on the defendant is the primary concern. I.N.A., 649 F.2d at 1272.
 
 
 27
 c. Conflict with Malaysia's Sovereignty
 
 
 28
 Although there is no evidence in the record that Malaysia has explicitly voiced a sovereign interest in this case, when the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher, undermining the reasonableness of personal jurisdiction. Rocke v. Canadian Auto. Sport Club, 660 F.2d 395, 399 (9th Cir.1981). This principle is particularly apt here, since the contract was executed in Malaysia by Malaysian citizens on forms supplied by a Malaysian bank.
 
 
 29
 d. Interest of Forum State
 
 
 30
 California has a strong interest in protecting its residents from injury and in providing a forum to remedy harm. Olsen, 729 F.2d at 650. However, the state courts have expressed concern about the adverse effect the assumption of jurisdiction might have on commerce when the forum activities of the nonresident are not substantial. See, e.g., Floyd J. Harkness Co. v. Amezcua, 60 Cal.App.3d 687, 694, 131 Cal.Rptr. 667 (1976); Belmont Industries v. Superior Court, 31 Cal.App.3d 281, 289, 107 Cal.Rptr. 237 (1973).
 
 
 31
 A finding that the execution of an indemnity agreement subjects a foreign guarantor to personal jurisdiction, particularly when the site of the contract is a foreign country, may not be in the best economic interests of the United States. Unlike the strong interest states have shown in products liability cases involving injuries to United States citizens as a result of nonresidents' efforts to serve a market with their goods, e.g., Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp., 633 F.2d 155 (9th Cir.1980), the forum interest in adjudicating the breach of a guarantee agreement executed abroad between Malaysian and West German citizens is relatively weak.e. Most Efficient Resolution
 
 
 32
 The site where the injury occurred and where evidence is located usually will be the most efficient forum. Raffaele, 707 F.2d at 399. Here, the entire transaction took place in Malaysia, and Merchant's and Bank's only contacts with Hapag's agents were in Malaysia.
 
 
 33
 In addition, the district court is required to apply California's choice of law rules. Olsen, 729 F.2d at 650 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) ). If Malaysian law should apply, a Malaysian forum might be the more efficient resolution. Id. A review of the record reveals no reason that compels a conclusion that California would be the more efficient judicial forum.
 
 
 34
 f. Convenient and Effective Relief for Plaintiff
 
 
 35
 Since Hapag regularly operates its cargo vessel between Long Beach and Port Kelang and apparently maintains agents to clear the cargo on arrival, litigating in Malaysia does not appear overly inconvenient. There is no indication in the records or briefs that effective relief would be unavailable in Malaysia. If a significant difference exists in the interpretation of breach of contract between Malaysia and California law, Hapag has failed to meet its burden to demonstrate such a limitation. I.N.A., 649 F.2d at 1273.
 
 
 36
 g. Existence of an Alternative Forum
 
 
 37
 In accord with a plaintiff's general burden on jurisdictional issues, Hapag must carry the burden of proving the unavailability of an alternative forum. I.N.A., 649 F.2d at 1273. Since Hapag has not met this burden, the panel cannot conclude that Hapag has no alternative forum. Olsen, 729 F.2d at 651.
 
 CONCLUSION
 
 38
 On balance, it appears that the district court's exercise of personal jurisdiction over the Malaysian third-party defendants was unreasonable. This conclusion is supported by the due process requirement that the defendant's expectations and burdens should be weighed more heavily than the plaintiff's hardships. Rocke, 660 F.2d at 400.
 
 
 39
 The absence of Bank's contacts with California and the minimal contacts of Merchant, the burdens of litigating in California, the residency of defendants in a foreign country, and the absence of proof that no alternative forum would be available for an efficient resolution all support the conclusion that personal jurisdiction does not lie over Merchant and Bank.
 
 
 40
 Since a judgment entered by a court without personal jurisdiction over the parties is void, Veeck v. Commodity Enterprises, Inc., 487 F.2d 423, 426 (9th Cir.1973), we reverse and remand with instructions to set aside the default judgment against Merchant and Bank as void for lack of personal jurisdiction.
 
 
 41
 REVERSED and REMANDED.
 
 
 
 [1]
 It should be noted that the case cited by the district court to support the concept that one act may be sufficient to confer jurisdiction, Raffaele v. Compagnie Generale Maritime, 707 F.2d 395 (9th Cir.1983), was a products liability case involving the injury of a longshoreman from a negligently packed container. The West German defendant had previously stuffed 94 containers routed to the forum in the previous two years. The line of cases treating the delivery of products into the "stream of commerce" resulting in torts in the United States exemplifies a broader application of jurisdiction because of the strong state interest in protecting its citizens against harmful products. See, e.g., Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp., 633 F.2d 155 (9th Cir.1980)