Murray **BRAND, Sydell Brand, Biarritz Motors, Inc., Plaintiffs-Appellees,**

v.

**MENLOVE DODGE, Los Angeles Dealer Auto Auction, Defendants.**

**Menlove Dodge, Defendant-Appellant.**

No. 84–6384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided Aug. 6, 1986.

---

James R. Goff, Orange, Cal., for plaintiffs-appellees.

George K. Fadel, Bountiful, Utah, for defendant-appellant.

Before GOODWIN, TANG and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Menlove Dodge appeals from a default judgment entered against it on fraud and negligence counts. Because the district court did not have personal jurisdiction over Menlove, we reverse.

## BACKGROUND

Menlove is an auto dealership in Bountiful, Utah. In early 1980, Menlove purchased a used 1979 Toyota landcruiser from another dealer and promptly resold it. Four months later, the buyer returned the vehicle to Menlove upon discovering that the front-end assembly had been replaced with a front end from a 1972 model. Menlove then sold the vehicle to Wade Patterson, a Utah used car dealer. The parties dispute whether Kendall Cochrane of Menlove told Patterson about the rebuilt front end and whether Patterson told Cochrane he intended to take the Toyota to California for resale.

Patterson sold the vehicle at the Los Angeles Auto Auction in Rosemead, California, to Murray Brand, a Phoenix auto dealer. Brand sold it in Arizona. Brand's customer had problems with the front end.

En route to a Toyota dealership, the front wheels of the landcruiser broke apart. Litigation between Brand and the customer resulted in a jury verdict against Brand.

Brand brought suit in federal district court in Los Angeles against Menlove, Patterson, and the Los Angeles Auto Auction.[1] Menlove moved to quash summons and process. When Menlove did not appear at the hearing on the motion, the motion was denied pursuant to Central District Local Rule 7.10 (requiring attendance of counsel at hearings unless excused). Menlove made no further appearances before the court, which entered a default judgment against it on the fraud and negligence counts and awarded compensatory and punitive damages. Menlove timely appeals.[2]

## DISCUSSION [3]

### I. Standard of Review

■ When a district judge has made no findings on disputed facts, we review the materials presented *de novo* to determine if the plaintiff has made out a prima facie case of personal jurisdiction over the defendant. *See Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1326–27 (9th Cir.1985). For the purposes of the appeal, we resolve all factual disputes in favor of Brand. *See id.* at 1327.

### II. General Jurisdiction

"In a case based on diversity jurisdiction, a federal court applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with

1. The Auto Auction was dismissed on summary judgment; Patterson settled with Brand. The only remaining parties are Menlove and plaintiffs-appellees, Murray Brand, Sydell Brand and Biarritz Motors (Brand's dealership). We will refer to appellees as "Brand."

2. The judgment was entered September 14, 1984. Menlove filed a notice of appeal on October 1, 1984. On October 2, 1985, the trial court certified that the judgment was final and appealable as of July 13, 1985.

Under Fed.R.App.P. 4(a), a premature notice of appeal is treated as though it were filed after the entry of judgment, Rule 4(a)(2), unless it is

followed by one of the post-trial motions enumerated in Rule 4(a)(4). No such motions were filed. Thus, Menlove's appeal was timely.

3. The district court apparently felt that Menlove waived its personal jurisdiction claim by not appearing for the scheduled hearing on its motion. However, Brand's counsel conceded at oral argument that the failure to appear did not divest this court of jurisdiction to review the issue. *See Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1326, 1331 (9th Cir.1985) (default judgment entered without personal jurisdiction is void).

due process." *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). Because California imposes no greater restrictions than does the United States Constitution, *see id.;* Cal. Civ.Pro.Code § 410.10 (West 1973), "federal courts in California may exercise jurisdiction to the fullest extent permitted by due process." *Scott,* 792 F.2d at 927; *see Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986).

■ There are two types of personal jurisdiction, specific and general. *See Haisten,* 784 F.2d at 1396. General personal jurisdiction, which enables a court to hear cases unrelated to the defendant's forum activities, exists if the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.; Peterson v. Kennedy,* 771 F.2d 1244, 1261 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1682, 90 L.Ed.2d 187 (1986); *see Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Our cases demonstrate that "substantial" is intended to be a fairly high standard. *See, e.g., Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1873 (no jurisdiction over foreign corporation that sent officer to forum for one negotiating session, accepted checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Cubbage v. Merchent,* 744 F.2d 665, 667–68 (9th Cir.1984), (no jurisdiction over doctors despite significant numbers of patients in forum, use of forum's state medical insurance system and telephone directory listing that reached forum), *cert. denied,* — U.S. —, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330–31 (9th Cir.1984) (no jurisdiction over defendants despite several visits and purchases in forum, solicitation of contract in forum which included choice of law provision favoring forum, and extensive communication with forum), *cert. denied,* — U.S. —, 105 S.Ct. 2143, 85 L.Ed.2d 500

**4.** Although none of these acts took place in California, a foreign act with an effect in the forum state can support personal jurisdiction.

(1985); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1243 (9th Cir.1984) (developing sales force in forum state insufficient). *See also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984) (circulation of magazines in New Hampshire may not support jurisdiction over cause of action unrelated to the magazines).

■ At oral argument, Brand claimed that Menlove had "substantial" contacts with California. We disagree. Menlove's only contacts were occasional car sales in Utah to California residents, car sales to Patterson with knowledge that he occasionally resold them in California, and the sale of the Toyota at issue to Patterson, with knowledge that it would be resold in California.[4] In addition, many of the cars Menlove sold entered the country through California ports. These contacts are neither "substantial" nor "systematic and continuous."

### III. Specific Jurisdiction

We have established a three-factor test to determine when a state may constitutionally exercise specific jurisdiction over a defendant:

1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of or results from the defendant's forum-related activities.

3. Exercise of jurisdiction must be reasonable.

*Scott,* 792 F.2d at 927; *Haisten,* 784 F.2d at 1397. In our case, the injury to Brand arose out of the activities that Brand argues were purposefully directed at California. Thus we focus on the first and third prongs of the test.

*Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *see Haisten,* 784 F.2d at 1399.

When the test was originally formulated, a plaintiff had to demonstrate each of the three elements to establish jurisdiction. *See Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1287 (9th Cir.1977). In response to recent Supreme Court opinions, we have adopted a more flexible approach. *See Haisten,* 784 F.2d at 1397. Jurisdiction may be established with a lesser showing of minimum contacts "if considerations of reasonableness dictate," and a presumption of reasonableness arises "upon a showing that the defendant purposefully directed [its] activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 105 S.Ct. 2174, 2184–85 (1985)). Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable.

*A. Purposeful Availment*

The requirement that the defendant do some act purposefully to avail himself of the laws of the forum state ensures that a person is not hailed into court as the result of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. *Burger King,* 105 S.Ct. at 2183; *Haisten,* 784 F.2d at 1397. We examine whether Menlove's activities were directed purposefully toward the forum. *See Burger King,* 105 S.Ct. at 2184.

Central to Brand's case is his allegation that Menlove sold the Toyota to Patterson knowing it would be resold in California. The alleged conduct places this case neatly between *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *Plant Food Co-op v. Wolfkill Feed & Fertilizer,* 633 F.2d 155 (9th Cir.1980). In *World-Wide Volkswagen,* defendant auto dealer sold a defective car to New York residents in New York. The car caused injury to plaintiffs

in Oklahoma, and they sued in Oklahoma court. The Supreme Court held that Oklahoma courts did not have jurisdiction over the auto dealer or its distributor based on the sale of the car, even though it was foreseeable that the car might be driven in Oklahoma. 444 U.S. at 296, 100 S.Ct. at 566. The court set out the standards for asserting jurisdiction in product defect cases.

[I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98, 100 S.Ct. at 567. The court emphasized that there was no evidence that the autos sold by the distributor were sold outside the New York-New Jersey-Connecticut area. *Id.* at 298, 100 S.Ct. at 567.

In *Plant Food,* a Canadian fertilizer distributor, acting on orders received from Washington middlemen, shipped defective fertilizer to the plaintiff in Montana. We found that the Montana court had jurisdiction and distinguished *World-Wide Volkswagen* because the fertilizer distributor "engaged in affirmative conduct to deliver its product to Montana." 633 F.2d at 159. Defendant's contact with Montana was voluntary and financially beneficial to it. *Id.* "When it knew the fertilizer was bound for Montana, [the defendant] could have objected or made other arrangements if it found exposure to Montana's long arm jurisdiction unacceptable." *Id.*

This case falls somewhere between these precedents. Unlike the *Plant Food* defendant, Menlove took no affirmative ac-

tion to send the Toyota to California; the decision to resell the vehicle in that state was the unilateral act of a third party. *See Burger King*, 105 S.Ct. at 2183. Moreover, it seems to place an unnecessarily large burden on local distributors to say that if Menlove wanted to avoid jurisdiction in California, it should not have sold the Toyota to Patterson once he announced his intent to resell in that state. On the other hand, unlike the defendants in *World-Wide Volkswagen*, Menlove allegedly had explicit knowledge that the car would be resold in California, and arguably delivered it into the stream of commerce with the expectation that it would be purchased by California consumers.

■ Because Menlove did not engage in affirmative conduct to deliver its product to California, but rather passively made a sale it allegedly knew would affect that state, we conclude that Menlove did not direct its activities purposefully at California so as to create a presumption of reasonableness of jurisdiction in the California courts. However, since Menlove did know that its activities would affect California interests to some extent, we conclude that this case falls into the category suggested in *Haisten*, where personal jurisdiction may be established on a lesser showing of minimum contacts with the state "if considerations of reasonableness dictate." 784 F.2d at 1397.

### B. Reasonableness

■ We examine seven factors to determine whether exercise of jurisdiction is reasonable: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendant's state; extent of purposeful interjection; and the forum state's interest in the suit. *Pacific Atlantic*, 758 F.2d at 1329–31; *Cubbage*, 744 F.2d at 670.

Brand admits this action could proceed in Utah. The factors concerned with convenience and efficiency all favor bringing the suit in that state. In light of modern trans-

portation and communications, *see McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the burden on Menlove to defend the suit in California would not be overwhelming. However, it is apparently not a large company, and defending a case in Los Angeles certainly appears inconvenient. We examine the burden on the defendant in light of the corresponding burden on the plaintiff. *Raffaele v. Compagnie Generale Maritime*, 707 F.2d 395, 398 (9th Cir.1983); *see Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355, 1359 (9th Cir.1983). It should not be significantly more difficult for the appellees, Phoenix residents, to try this case in Utah than in Los Angeles, *see Cubbage*, 744 F.2d at 670, and they have made no showing that California is more convenient for them. Most of the key events that would need to be proved took place in Arizona or Utah. The primary factual dispute revolves around representations made when Menlove sold the Toyota to Patterson. The site where the events in question took place or where most of the evidence is located usually will be the most efficient forum. *Pacific Atlantic*, 758 F.2d at 1331; *see Paccar International, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1065–66 (9th Cir.1985).

The factual allegations in this case do not strongly support the reasonableness of jurisdiction by California either. The purposeful interjection was very limited; Menlove merely decided to sell to someone who indicated he would resell in California. It had no continuing obligations or operations in the state. *See Burger King*, 105 S.Ct. at 2186; *Cubbage*, 744 F.2d at 669. California itself has a very limited interest in the resolution of the case. The alleged fraud and negligence took place in Utah, the injury in Arizona. California's interest is, at most, an interest in assuring that out-of-state residents do not knowingly allow defective products to be sold for delivery in California. While states have a strong interest in protecting their *own* citizens from defective products, *see Burger King*, 105

S.Ct. at 2183, California's interest in this case is clearly weaker. *See Pacific Atlantic,* 758 F.2d at 1330 (state's interest in dispute between non-forum parties relatively weak); *Paccar,* 757 F.2d at 1065 (same).

■ The reasonableness factors, taken together,[5] do not "dictate" personal jurisdiction over Menlove in California in this case. Considerations of efficiency and convenience favor suit in Utah and California's interest is limited. This case is significantly different from our prior cases that have found personal jurisdiction based on the defendant's knowledge that its product was being sent to the forum state. *See Hedrick,* 715 F.2d at 1358–59; *Raffaele,* 707 F.2d at 397–99. In both *Hedrick* and *Raffaele,* a citizen of the forum state was injured in the forum. Not only was the state a more efficient forum because of the presence of witnesses and evidence, but the forum state's interest was significantly enhanced because of the injury to one of its own citizens. *See Hedrick,* 715 F.2d at 1359; *Raffaele,* 702 F.2d at 398–99; *see also McGee,* 355 U.S. at 223, 78 S.Ct. at 201 (finding jurisdiction where forum had interest in protecting own citizen and crucial witnesses likely to be found in forum). The result in this case is different because the reasonableness factors are simply not as compelling. *See Pacific Atlantic,* 758 F.2d at 1330 & n. 1 (noting special treatment given to "products liability cases involving injuries to United States citizens as a result of non-residents' efforts to serve a market with their goods").

## CONCLUSION

We find that the facts alleged by Brand are insufficient to make out a prima facie showing of personal jurisdiction over Menlove by a California court.

REVERSED.

5. The conflict with the sovereignty of the defendant's state is not a very significant factor in cases involving only U.S. citizens; conflicting policies between states are settled through choice of law analysis, not through loss of jurisdiction. *See Burger King,* 105 S.Ct. at 2188 n. 26; *Haisten,* 784 F.2d at 1402; *see also Keeton,* 465 U.S. at 778, 104 S.Ct. at 1480. Utah's sovereignty would not be significantly impaired by allowing the action to proceed in California.