105 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sandra TING, Plaintiff-Appellant,
v.
ORBIT COMMUNICATION COMPANY, LTD; Orbit Communications
Company, S.P.A.; Alexander B. Zilo, Defendants-Appellees.
 No. 95-55838.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided Jan. 7, 1997.
 
 1
 Before: FERNANDEZ and HAWKINS, Circuit Judges, and SCHWARZER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-appellant Sandra Ting filed suit against defendants-appellees Orbit Communications Company, Ltd., Orbit Communications Company (Italia) S.P.A. (together "Orbit"), and Alexander B. Zilo ("Zilo") in California Superior Court alleging breach of contract, breach of the implied covenant of good faith and fair dealing, sexual harassment, and fraud arising from her tenure as an Orbit employee from August 1993 to May 1994. The district court dismissed the action without prejudice for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), and Ting appeals. We affirm in part and reverse in part.
 
 
 4
 Because the parties are familiar with the facts, we do not recite them in detail here. In short, Ting claims Orbit breached her employment contract by failing to open an office in Los Angeles, which she alleges they promised to do. She also alleges sexual discrimination and wrongful termination in violation of public policy against Orbit and Zilo, claiming that she was fired for rejecting Zilo's allegedly repeated sexual overtures. Finally, Ting alleges that Orbit and Zilo fraudulently induced her to quit her job and relocate to a different continent.
 
 
 5
 Ting contends that the district court had general and specific jurisdiction over both Orbit and Zilo. We conclude that the district court lacked general jurisdiction over both Orbit and Zilo. We also hold that the district court has specific jurisdiction over Ting's contract claims, but not over her tort claims.
 
 
 6
 We begin with Ting's general jurisdiction claims. Although the Due Process Clause of the Fourteenth Amendment limits a state's power to assert in personam jurisdiction over a nonresident defendant, Pennoyer v. Neff, 95 U.S. 714 (1878), a state may do so when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A state court's exercise of general jurisdiction over a foreign corporation is "reasonable and just" when a corporation has "continuous and systematic" general business contacts with the state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984) (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438, 445 (1952)).
 
 
 7
 As for general jurisdiction over Orbit, Ting argues that Orbit conducts regular business activities in California. We hold, however, that the district court correctly found all of Orbit's activities in California to be related only to the acquisition of licenses and TV programs for use abroad. Thus, the Supreme Court's holding in Helicopteros, 466 U.S. at 413, that "the law has long been that presence in the state solely to acquire product for use elsewhere does not aid general jurisdiction," is controlling here. The Helicopteros Court ultimately held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Id. at 418. Like the defendant in Helicopteros, Orbit has not performed its services in California or sold any product that reached California, has never solicited business in California, has never owned real or personal property in California, and has never maintained an office there.
 
 
 8
 Furthermore, Orbit's use of California attorneys and consultants was merely part of its process of purchasing licenses and television programs. Even Orbit's use of a Los Angeles law firm as its agent for service of process was related to Orbit's product acquisition.
 
 
 9
 Finally, Orbit's inclusion of California choice of forum and choice of law clauses in its contracts does not warrant a finding of general jurisdiction. First, the choice of forum clauses relate only to Orbit's California television licensing activities and disputes arising therefrom, and hence cannot form the basis for a finding of general jurisdiction. See, e.g., Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir.1984) ("general jurisdiction" in Arizona could not be premised upon fact that defendant had entered into several airplane purchase agreements that provided for Arizona choice of forum clauses), cert. denied, 471 U.S. 1066 (1985). Second, since "a [choice of law] provision standing alone [is] insufficient to confer jurisdiction," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985), Orbit's use of these provisions in its contracts does not affect the general jurisdiction issue. Furthermore, even Ting acknowledges that the reason for such choice of law provisions was that Orbit had to acquiesce to the requests of California-based companies in order to successfully negotiate for licenses and programs. Thus, the choice of law provisions also relate only to the acquisition of Orbit's product from California companies. Hence no general jurisdiction exists.
 
 
 10
 With respect to Zilo, Ting argues only two bases for general jurisdiction: (1) Zilo spends a significant amount of time every day negotiating agreements with California companies; and (2) he maintains checking and savings accounts in California. We conclude that no general jurisdiction exists with respect to Zilo either.
 
 
 11
 First, a company's executive cannot be sued in a forum merely because the company might be subject to jurisdiction there. See Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir.1990). Thus, Zilo himself must have sufficient contacts with California to warrant an exercise of general jurisdiction. But Zilo stated that he has no such contacts: he has never worked in California, has no office or mailing address there, has no property (other than the bank accounts) there, has never paid California taxes, and has not traveled to California during his employment with Orbit. Moreover, Zilo's business contacts with California must be analyzed in light of our finding with respect to Orbit's business contacts with California. Because we hold that Orbit has insufficient contacts with California to warrant an exercise of general jurisdiction, we hold that Zilo's business contacts with California are likewise insufficient.
 
 
 12
 Second, if a defendant's property in a state is unrelated to the plaintiff's cause of action, "the presence of the property alone, i.e., absent other ties among the defendant, the State, and the litigation, would not support the State's jurisdiction." Shaffer v. Heitner, 433 U.S. 186, 187 (1977). Here, Ting's claims are unrelated to Zilo's checking or savings accounts in California and Ting has alleged no other ties between Zilo and California. Therefore, no general jurisdiction exists with respect to Zilo.
 
 
 13
 Ting also contends that the district court has specific jurisdiction over her contract claims against Orbit and that it has specific jurisdiction over her tort claims against Orbit and Zilo. To establish that a court has specific personal jurisdiction over a defendant, a plaintiff must show that: (1) the nonresident defendant purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction would be reasonable. Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir.1991).
 
 
 14
 We first address specific jurisdiction with regard to Ting's contract claims. To satisfy the purposeful availment prong in contract cases, the defendant must have performed some affirmative conduct that allows or promotes the transaction of business within the forum state. Roth, 942 F.2d at 621. But the mere existence of a contract with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. Burger King, 471 U.S. at 478. On the other hand, if a defendant reaches out beyond his forum to create continuing relationships and obligations with citizens of another state, he is subject to regulation and sanctions in the other state for the consequences of his activities. Id. at 473. The Supreme Court has emphasized the need for a realistic approach in evaluating personal jurisdiction based on a contract, stating that a contract is an intermediate step between prior negotiations and future consequences that are the real object of the transaction. Id. at 479. "It is these factors--prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id.
 
 
 15
 In Roth, we held that the future consequences of the contract at issue was the decisive factor in establishing purposeful availment of California by a nonresident defendant who had a minimal physical presence in the forum and who had not reached out to create continuing obligations with the plaintiff in California. We stated: "The point ... is simply that the contract concerned a film, most of the work for which would have been performed in California.... In looking at the 'economic reality,' it seems that the contract's subject would have continuing and extensive involvement with the forum." Roth, 942 F.2d at 622 (quoting Haisten v. Grass Valley Medical Reimbursement Fund, 784 F.2d 1392, 1398 (9th Cir.1986)) (citation omitted).
 
 
 16
 Here, Ting alleges that Orbit contemplated opening a Los Angeles office where Ting would be based, as reflected in her employment contract. The contract contains numerous references to California in clauses discussing: personal travel expenses when Ting would be based outside Los Angeles; reimbursement for business expenses, including California State Bar expenses; and reimbursement for moving expenses between Hong Kong, Los Angeles, and London. Like the contract in Roth, Ting's employment contract contemplated that she would have continuing involvement with California. Moreover, according to Ting, this promised California connection was a material term of the contract. Cf. McGlinchy v. Shell Chemical Co., 845 F.2d 802, 817 (9th Cir.1988) ("There are not terms in the contract which would indicate that [defendant corporation] contemplated an effect in California, much less that any such effect should be considered a material term of the agreement."). Thus, following our analysis in Roth, we conclude that Orbit purposefully availed itself of California.
 
 
 17
 Defendants nevertheless contend that under English law, incorporated into the contract by its choice of law clause, Orbit was not required to open a Los Angeles office, and the bar on parol evidence would disallow any evidence of the parties' contemplation. We need not address how the contract would be interpreted under English law, however, because the language in the contract expressly states the parties' contemplation of a future California connection. These contemplated future consequences in California are sufficient to demonstrate purposeful availment of California by Orbit, and the question of whether the contract is legally enforceable is a separate issue.
 
 
 18
 Next, Ting must show that her claims against Orbit arise out of or result from its forum-related activities. Given our holding that Orbit's employment contract with Ting constitutes purposeful availment of California as a forum, we find this second prong to be met as well. Ting's breach of contract claims arise out of her employment contract with Orbit.
 
 
 19
 Finally, we must address whether an exercise of jurisdiction over Orbit would be reasonable. In deciding whether an exercise of jurisdiction would be reasonable, this court weighs the following seven factors:
 
 
 20
 (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.
 
 
 21
 Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir.1995).
 
 
 22
 The district court did not reach the reasonableness prong, but we address it briefly. First, our holding on the first prong of purposeful availment addresses the first factor: the extent of purposeful interjection. Sinatra v. National Enquirer, 854 F.2d 1191, 1199 (9th Cir.1988). This factor therefore favors Ting.
 
 
 23
 Second, in assessing the defendant's burden from litigating in the forum, we must "examine the burden on the defendant in light of the corresponding burden on the plaintiff." Sinatra, 854 F.2d at 1199 (quoting Brand v. Menlove Dodge, 796 F.2d 1070, 1075 (9th Cir.1986)). Ting argues that she faces significant legal and economic barriers to litigating in a forum other than California.[1] Nevertheless, in light of Orbit's contacts with California for licensing purposes, its retention of California counsel, and its periodic sending of personnel to California, we conclude that requiring Orbit to defend a suit in California would not be particularly burdensome. On balance, then, this factor also favors Ting.
 
 
 24
 Third, we have held that "[t]he factor of conflict with the sovereignty of the defendant's state is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." Sinatra, 854 F.2d at 1199 (internal quotations omitted). The Sinatra court found that this factor favored the plaintiff because defendant had an office or affiliate in the United States. Here, Orbit maintains no such office or affiliate, so this factor favors it.
 
 
 25
 Fourth, the forum state's interest in adjudication is a toss-up. As we noted in Roth, little case law exists in this circuit regarding a forum's interest in protecting its residents in the contracts context. 942 F.2d at 624. Thus, this factor favors neither party.
 
 
 26
 Fifth, a determination of which forum would promote the most efficient judicial resolution of this controversy is also a close one. Because the alleged wrongs against Ting took place while she was in Hong Kong or Rome, many of the likely witnesses would probably be outside the United States and hence judicial resolution may not be as effective in California. On the other hand, Ting would likely be a witness, and she currently resides in California. This factor favors neither party.
 
 
 27
 The sixth factor, the importance of the forum to the plaintiff's interest in convenient and effective relief, favors Ting. She claims that she is currently unemployed in California, making it economically infeasible and inconvenient to litigate elsewhere.
 
 
 28
 Finally, we must assess the availability of an alternative forum. We have held that the plaintiff "bears the burden of proving the unavailability of an alternative forum." FDIC v. British-American Ins. Co., 828 F.2d 1439, 1441 (9th Cir.1987). Ting has not demonstrated that she would not be able to sue Orbit outside of California. In fact, her retention of Italian counsel seems to support the availability of Italy as a forum for this suit and mitigates against Ting's argument that her employment contract is governed by British law, Ting may be able to sue in the United Kingdom. Thus, this factor favors Orbit.
 
 
 29
 In sum, the following three factors favor Ting: purposeful availment, burden on defendant, and convenience for plaintiff. The following two factors favor Orbit: extent of conflict with foreign sovereignty and existence of an alternative forum. The remaining two factors--forum state's interest and efficient judicial resolution--do not favor either party. While these factors do not point to a clear outcome, we have held that "[o]nce purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable." Shute v. Carnival Cruise Lines, 897 F.2d 377, 386 (9th Cir.1990) (quoting Burger King, 471 U.S. at 476)), rev'd on other grounds, 111 S.Ct. 1522 (1991). Here, Orbit has not presented a compelling case that the exercise of jurisdiction would be unreasonable. See id. Therefore, we hold that the district court has personal jurisdiction over Orbit with respect to Ting's contract claims.
 
 
 30
 We next address the issue of whether the district court had specific jurisdiction over Ting's tort claims against Orbit and Zilo for sexual discrimination, wrongful termination in violation of public policy, and fraud. In tort cases, a court may exercise jurisdiction over a nonresident defendant if he "merely engages in conduct aimed at, and having effect in, the situs state." Ziegler, 64 F.3d at 473. Consequently, a plaintiff need only show the following three elements of purposeful availment in tort cases: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant should have anticipated would be suffered in the forum state. Id. at 474.
 
 
 31
 Ting cannot satisfy these requirements. Ting lived and worked in Rome during her employment with Orbit, and the alleged sexual harassment and wrongful termination in violation of public policy occurred there. Therefore, neither Orbit nor Zilo can be said to have aimed these alleged harmful actions at California. Similarly, Ting's claim that Orbit and Zilo fraudulently induced her to give up her prior job by promising that she would be placed in Los Angeles does not show intentional action aimed at California. Even assuming that Ting's claim is true, by fraudulently inducing her to quit a job in Hong Kong for a supposed job in London, and eventually Los Angeles, Orbit and Zilo cannot be said to have intended harm to be suffered in California. In fact, if these defendants knew that they would never open a Los Angeles office and they were merely deceiving Ting, they certainly did not aim their actions at California. Thus, with respect to Ting's tort claims, we find that Orbit and Zilo did not purposefully avail themselves of California and hence we need not consider whether Ting has satisfied prongs two and three of the specific jurisdiction test.
 
 
 32
 We hold that the district court has no general jurisdiction over Orbit or Zilo. The district court does have specific jurisdiction over Orbit in connection with Ting's contract claims, but has no specific jurisdiction over Orbit or Zilo with respect to Ting's tort claims.
 
 
 33
 AFFIRMED IN PART AND REVERSED IN PART. Each party to bear its own costs.
 
 
 34
 Orbit's Motion for Sanctions is DENIED.
 
 FERNANDEZ, Circuit Judge, dissenting:
 
 35
 I respectfully dissent to the extent that the majority declares that there is specific jurisdiction over Ting's contract claims. Ting asks us to stretch the almost infinitely ductile personal jurisdiction factors set forth in our prior cases beyond the breaking point. I would decline to do so.
 
 
 36
 Ting's best argument for having us find specific jurisdiction is based upon Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir.1991). In that case, we did draw the principles out very very far. But there, at least, the plaintiff was firmly planted in California and would undoubtedly have performed a substantial part of the contract in California, if there were a contract. Id. at 622. We held that the principles needed to tie the case to California had not quite snapped, but we recognized that our decision was "a very close call." Id.
 
 
 37
 Here, the tying principles have fractured. This contract was formed with someone who was not firmly rooted in California and who was not, then, performing services in California. It "contemplated" that she would be in the London office, which Orbit planned to open, for six months. It "contemplated" that she would then be in the Los Angeles office, which Orbit also planned to open. The fact was that Orbit never did open a London or a Los Angeles office. All (or virtually all) of Ting's services were rendered in Rome.
 
 
 38
 Here foreign individuals entered into a contract with a United States citizen in a foreign country, chose still another country's law for construction of the contract, and in fact accepted and provided all of the performance of the contract in foreign countries. I cannot agree that they become subject to the personal jurisdiction of the district court simply because it was "contemplated" that services would be rendered in California, if a planned office were ever opened there.
 
 
 39
 Thus, I respectfully dissent.
 
 
 
 *
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The record does contain a letter from an Italian attorney whom Ting apparently retained to contest her termination