### AMOCO EGYPT OIL COMPANY; Egyptian General Petroleum Corporation, Plaintiffs–Appellants,

v.

### LEONIS NAVIGATION COMPANY, INC., Defendant–Appellee.

No. 91–35978.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided July 28, 1993.

Louis P. Sheinbaum, Waesche, Sheinbaum & O'Regan, New York City, for plaintiffs-appellants.

Graydon S. Staring, Lillick & Charles, San Francisco, CA, for defendant-appellee.

Before: BOOCHEVER, THOMPSON, and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

This is an appeal from the district court's dismissal of an action against a foreign corporation for lack of personal jurisdiction. We affirm.

## BACKGROUND

The Panay Sampaguita, a ship sailing from Singapore to France, collided with an oil platform in Egyptian waters. The ship was owned by a Panamanian corporation and bareboat chartered [1] by Leonis Navigation ("Leonis"), a Philippine corporation with its headquarters in Manila. The platform was jointly owned by Amoco Egypt Oil Company, a Delaware corporation with its principal offices in Egypt, and Egyptian General Petro-

---

1. Under a bareboat charter, the owner gives the charterer full possession and control of the vessel for a period of time. The charterer is responsible for directing the operations of the vessel and providing the master and crew. Admiralty law treats the bareboat charterer as the owner for many purposes. *See Reed v. The Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448 (1963).

leum Corporation ("EGPC"), an instrumentality of the Egyptian government charged with exploitation of its oil resources. Amoco Egypt and EGPC (together, "Amoco") filed suit against Leonis for $250,000,000 in damages in the United States District Court for the Western District of Washington.

Leonis' contacts with Washington derive from its bareboat chartering of the Panay Sampaguita and three other vessels. Leonis subchartered all four vessels to Leo Maritime Co., Ltd., which further subchartered one of the vessels, the Luzon Sampaguita, to Navix Line, Ltd. ("Navix"). At the direction of time charterer Navix, the Luzon sailed exclusively between Tacoma and Japan carrying Washington logs, making seven round trips between the date of Leonis' charter and the date the complaint was filed. The Panay and the two other vessels also called on Washington ports during the same period, but on a more random and infrequent basis.

Incident to its boat chartering, Leonis had some additional contacts with Washington. The bills of lading to which Leonis was a party were executed by Washington businesses and provided that disputes would be decided under United States law. Leonis paid the Luzon's crew with U.S. dollars that were purchased in Washington. An agent of Navix purchased supplies and services for Leonis crew members while the Luzon was in Washington. Leonis also obtained a certificate of financial responsibility for environmental claims from the United States Coast Guard in Washington, D.C., a requirement for any vessel entering United States waters.

The district court dismissed Amoco's complaint, ruling that because Leonis was not licensed to do business, had no offices or property, based no employees, sold no products, did not advertise, and had no shareholders in the State of Washington, the court could not exercise general jurisdiction over Leonis. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411, 418–19, 104 S.Ct. 1868, 1870–71, 1874, 80 L.Ed.2d 404 (1984). Amoco timely appealed, claiming that Leonis' contacts were both purposeful and substantial enough to allow the district court to exercise jurisdiction over the claim.

## STANDARD OF REVIEW

■ Because Amoco's factual assertions are essentially uncontroverted, we review the district court's ruling on personal jurisdiction de novo. Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Where, as here, the district court bases its jurisdictional ruling on affidavits and discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has failed to make a prima facie showing of personal jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986); Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir.1977).

## DISCUSSION

■ To establish jurisdiction, Amoco must show that Washington's jurisdictional statute confers jurisdiction over Leonis and that the exercise of jurisdiction accords with federal constitutional principles of due process. Shute, 897 F.2d at 380; Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986). Because Amoco's claim against Leonis did not arise out of, and is unrelated to, Leonis' contacts with Washington, Amoco concedes that the district court may only hear the claim if Washington can exercise "general jurisdiction" over Leonis. See Helicopteros, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9.

### A. Washington's Jurisdictional Statute

■ The district court dismissed concerns with Washington law by stating that Washington's long-arm statute, Wash.Rev.Code § 4.28.185, is coextensive with constitutional standards. See Shute, 897 F.2d at 380. Section 4.28.185, however, deals only with specific jurisdiction. General jurisdiction is authorized by § 4.28.080(10), which provides for service of summons on a foreign corporation "doing business" in Washington. Washington courts have interpreted this section as conferring general jurisdiction over nonresident defendants who conduct "substantial" and "continuous" business in the state "of such a character as to give rise to a legal

obligation." *Crose v. Volkswagenwerk Aktiengesellschaft,* 88 Wash.2d 50, 558 P.2d 764, 766–67 (1977) (en banc); *see Hein v. Taco Bell, Inc.,* 60 Wash.App. 325, 803 P.2d 329, 331 (1991). Although the Washington Supreme Court has never explicitly so stated, courts of appeal have consistently held that the "doing business" and due process inquiries are the same. *See MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.,* 60 Wash.App. 414, 804 P.2d 627, 630–31 (1991); *Hein,* 803 P.2d at 332. Thus " 'the statutory and constitutional standards merge into a single due process test,' " *Shute,* 897 F.2d at 380 (quoting *Pedersen Fisheries, Inc. v. Patti Indus.,* 563 F.Supp. 72, 74 (W.D.Wash.1983)), and we turn to the question of whether general jurisdiction over Leonis comports with due process requirements.

## B. *Due Process*

■ "Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The Supreme Court has bifurcated this due process determination into two inquiries, requiring, first, that the defendant have the requisite contacts with the forum

state to render it subject to the forum's jurisdiction, and second, that the assertion of jurisdiction be reasonable. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (majority agreeing on dismissal because assertion of jurisdiction was unreasonable, but disagreeing on whether minimum contacts existed).[2] Because we conclude that the exercise of personal jurisdiction over Leonis would be unreasonable,[3] we need not address the issue of contacts.[3] · *See FDIC v. British–American Ins. Co., Ltd.,* 828 F.2d 1439, 1442 (9th Cir. 1987); *Fields,* 796 F.2d at 302.

■ We have listed the following factors to be balanced in determining reasonableness in a specific jurisdiction context:

the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute,* 897 F.2d at 386; *see Insurance Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981). We apply these same factors to the present general jurisdiction analysis. The burden is on the defendant to " 'present a compelling case' that the

**2.** Although neither the Supreme Court nor this circuit has explicitly engaged in a separate reasonableness inquiry in a general jurisdiction case, *Asahi* 's interpretation of *International Shoe* as entailing separate contacts and reasonableness inquiries is not limited to the specific jurisdiction context but applies to all determinations of personal jurisdiction. *See Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032–33.

**3.** Although the district court based its dismissal on a contacts analysis, we may affirm the district court's decision on any basis supported by the record. *United States v. Washington,* 969 F.2d 752, 755 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993). We note, however, that in view of Leonis' lack of incorporation, license or authorization to do business, offices, property, employees, payment of taxes, advertising, solicitation, or sales in Washington, we doubt that Leonis' contacts with Washington are sufficiently "continuous and sys-

tematic" to support general jurisdiction. *See Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1873. The Supreme Court has upheld general jurisdiction only once, in a case involving contacts significantly more comprehensive than those presented here. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). We have stated that "the *Perkins* holding that the cause of action need not arise out of the defendant's activities in the forum is limited to its unusual facts," *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir. 1984), and regularly have declined to find general jurisdiction even where the contacts were quite extensive. *See, e.g., Shute,* 897 F.2d at 381; *Cubbage v. Merchent,* 744 F.2d 665, 667–68 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985).

exercise of jurisdiction would, in fact, be unreasonable." *Shute,* 897 F.2d at 386 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)).

### 1. Extent of Purposeful Interjection

This factor parallels the question of minimum contacts, which we have declined to decide. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988). We similarly put it aside here because the remaining six factors present a compelling case for unreasonableness.

### 2. Burden on Defendant

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. The burden on Leonis of defending the suit in Washington is considerable. Leonis' base of operations is in Manila. The company presently has no connections with Washington, nor does it have an agent or office anywhere else in the United States. *See Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir.1991). Potential witnesses and evidence are not located in Washington. Although Amoco suggests that Egypt would be an equally burdensome forum for Leonis, the burden on the defendant is not a *forum non conveniens* question, but a function of due process requirements.

### 3. Conflict with Sovereignty of Defendant's State

■ Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction. *Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1330 (9th Cir. 1985). As the Supreme Court has noted, " '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034 (quoting *United States v. First Nat'l City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). The international context of this case militates in favor of Leonis.

### 4. Forum State's Interest

Although the district court stated that "it cannot be said that Washington State with its extensive maritime trade does not have an interest in an allision between a shipping vessel and an oil platform," this interest is no greater or more specific than that of any port city around the world. *Asahi* cautions against such an overly broad definition of a state's interest. *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. Washington has no interest in this claim. The vessel involved in the accident was not sailing from Washington and carried no Washington cargo. Neither the accident nor the lawsuit's outcome has any effect on Washington or its residents. Nor is there even an arguable basis for the application of Washington law to an accident in Egyptian waters involving a Philippine-owned ship bound from Singapore to France and an oil platform owned jointly by an Egyptian instrumentality and a Delaware corporation with its only base of operations in Egypt. *See id.* at 115, 107 S.Ct. at 1033–34. The absence of a forum state interest weighs heavily against the reasonableness of Washington's assertion of jurisdiction.

### 5. Most Efficient Resolution

Unlike the burden on the defendant, this factor involves a comparison of alternative forums. *See Shute,* 897 F.2d at 387; *Pacific Atl. Trading Co.,* 758 F.2d at 1331. The interest in obtaining the most efficient resolution of this controversy clearly points to Egypt and away from Washington. "The site where the injury occurred and where evidence is located usually will be the most efficient forum." *Pacific Atl. Trading Co.,* 758 F.2d at 1331. Moreover, assuming that Washington's choice of law rules would require the application of Egyptian law, the efficiency of proceeding in Washington is further diminished. *See id.; Insurance Co. of N. Am.,* 649 F.2d at 1273.

 

### 6. Convenient and Effective Relief for Plaintiff

Surprisingly, Amoco's interest in this litigation also suggests the unreasonableness of Washington jurisdiction. Both plaintiffs have all of their operations in Egypt; the accident on which the claim is based occurred in Egypt; and the bulk of the relevant evidence and witnesses are presumably located in Egypt. Amoco has no involvement with Washington and has given no clear statement of its interest in having the claim litigated there.[4]

### 7. Existence of Alternative Forum

■ Amoco has the burden of proving the unavailability of an alternative forum. *Pacific Atl. Trading Co.*, 758 F.2d at 1331. It has not met this burden. Proceedings involving Leonis' liability for damages caused by the allision are already pending in Egypt. In accordance with the 1976 International Convention on Limitation of Liability for Maritime Claims, to which Egypt is a party, Leonis commenced a limitation action in Egypt to determine the extent of provable damages and limit its liability.[5] That action was filed on January 30, 1990, one day before Amoco filed the present claim. Both plaintiffs were named in the limitation action and notified of the proceedings. A limitation fund was established in Egypt, administered by the Egyptian court. Although Amoco has not filed any claims against the fund, an alternative forum for its claim against Leonis plainly exists.

### CONCLUSION

On balancing the above factors, we conclude that Leonis has presented a compelling case that the Washington district court's exercise of personal jurisdiction would be un-reasonable. We therefore affirm the district court's judgment of dismissal.

**AFFIRMED.**

---

4. It appears to us that the only possible reason for Amoco to seek Washington jurisdiction would be to attempt to avoid limitations on Leonis' liability under Egyptian law. Although limitation of liability might be a legitimate concern with regard to "effective relief," Amoco vigorously denies that this is its motive and fails to suggest another. We are thus left with absolutely no interest of Amoco in litigating in Washington.

5. Under Egyptian law, an owner or charterer of a ship is entitled to limit its liability for claims, including property damage, unless "it is proved that the loss resulted from his personal act or omission, committed with the intent to cause such loss, or recklessly and with knowledge that such loss would probably result." The court calculates the amount of the fund and distributes it to claimants as compensation for damages after determining their claims.