**GATOR.COM CORP., Plaintiff–
Appellant,**

v.

**L.L. BEAN, INC., Defendant–Appellee.**

No. 02–15035.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Filed Sept. 2, 2003.

Michael Traynor (argued), San Francisco, CA, Cooley Godward (appeared only), Reston, VA, and Brian E. Mitchell, San Francisco, CA, for the plaintiff-appellant.

Peter J. Brann, Lewiston, ME, for the defendant-appellee.

Before FERGUSON, BRUNETTI, and TASHIMA, Circuit Judges.

## OPINION

FERGUSON, Circuit Judge.

This case presents the issue of whether the District Court has personal jurisdiction over Defendant–Appellee L.L. Bean, Inc. ("L.L. Bean"), either because L.L. Bean's contacts with California as a result of its sales and other activities in California are "substantial" or "continuous and systematic," or because L.L. Bean sent a cease-and-desist letter to the Plaintiff, Gator.com Corp. ("Gator"), at its office in California. In response to L.L. Bean's motion for dismissal, the District Court determined that it did not have in personam jurisdiction. Because we determine that L.L. Bean's contacts with California, in particular its substantial mail-order and internet-based commerce in the state, are sufficient to support the assertion of general personal jurisdiction, we reverse the District Court's decision and remand for further proceedings.

### I.

#### A. Factual Background

Defendant/Appellee L.L. Bean is a Maine corporation with its principal place of business in that state. Its corporate offices, distribution facilities, and manufacturing facilities are all located in Maine. L.L. Bean sells clothing and outdoor equipment and maintains stores in Maine, Delaware, New Hampshire, Oregon, and Virginia. In total, L.L. Bean sells over one billion dollars worth of merchandise annually to consumers in 150 different countries.

A very large percentage of L.L. Bean's sales come from mail-order and internet business. The company ships approximately 200 million catalogs each year. In 2000, its website sales accounted for over two hundred million, or about 16 percent, of its total sales. A September 2000 *New York Times* article described L.L. Bean as "an e-commerce star that is out-performing all but a few companies in its categories on the Web." Bob Tedeschi, *L.L. Bean Beats the Current by Staying in Midstream*, N.Y. Times, Sept. 20, 2000, at H7. The same article quoted an L.L. Bean senior executive as stating that "[t]he Web is the fastest-growing, most profitable source of revenue for [L.L. Bean], . . . [a]nd it's been the primary area for generating new customers." *Id.*

L.L. Bean is not authorized to do business in California, has no agent for service of process in California, and is not required to pay taxes in California. However, in the year 2000 alone, L.L. Bean sold millions of dollars worth of products in California (about six percent of its total sales) through "its catalog, its toll-free telephone number, and its Internet website." *See* Appellee's Br. at 41. In the same year, L.L. Bean also mailed a substantial number of catalogs and packages to California residents, targeted substantial numbers of California residents for direct email solicitation, and maintained substantial numbers of "on-line" accounts for California consumers. *See id.* at 5. Like other internet customers, California residents may view and purchase products on-line as well as interact with L.L. Bean customer service representatives "live" over the internet if they have questions or concerns with an L.L. Bean product.[1]

In addition, L.L. Bean conducts national print and broadcast marketing efforts that include, but according to L.L. Bean do not target, California. L.L. Bean also maintains relationships with numerous California vendors from whom they purchase products. *See* Appellee's Br. at 5. Other

---

1. At an October 9, 2001 hearing, L.L. Bean conceded that its website was "interactive."

than for the year 2000, L.L. Bean has not provided information regarding the contacts its employees have had with California or any purchases of goods from California.

Plaintiff/Appellant Gator.com Corp. is a Delaware corporation with its principal place of business in California. Gator develops and distributes software ("the Gator program") to consumers who purchase goods or services over the internet. The Gator program provides a "digital wallet" which stores computer user passwords to various websites, user personal information, and credit card information. In addition, when a user visits a website on the internet, the Gator program analyzes the Uniform Resource Locator ("URL") associated with that web page. When it recognizes certain URLs that have been preselected by Gator, the program displays a pop-up window offering a coupon for a competitor. Gator users who visit L.L. Bean's website are offered coupons for one of L.L. Bean's competitors, Eddie Bauer, via a pop-up window that at least partially obscures L.L. Bean's website.

On March 16, 2001, L.L. Bean's counsel mailed Gator a cease-and-desist letter requesting that Gator stop its pop-up windows from appearing when customers visited L.L. Bean's website. Although the letter stated that "L.L. Bean has no particular desire to engage in costly and time-consuming litigation," it stated that "if necessary, [L.L. Bean] will undertake all means available to prevent this activity from continuing." The letter also stated L.L. Bean's counsel's opinion that the pop-up windows "unlawfully appropriate[d] the good will associated with L.L. Bean's famous trademark, create[d] confusion about the source of the products and services offered at llbean.com, and suggest[ed] an affiliation or connection between or among L.L. Bean, Gator.com, and Eddie Bauer that does not in fact exist." In addition, the letter stated that "[u]nder applicable federal and state law, L.L. Bean is entitled to an injunction against such unlawful conduct."

**B. Procedural History**

On March 19, 2001, Gator filed a declaratory judgment action in the District Court for the Northern District of California, requesting a judgment that the Gator program "does not infringe, or dilute, directly or contributorily, any trademark held by [L.L. Bean] and does not constitute unfair competition, a deceptive or unfair trade or sales practice, false advertising, fraud, or any other violation of either federal or state law." On July 16, 2001, L.L. Bean filed a Motion to Dismiss, along with a Declaration of Support, alleging that the District Court lacked personal jurisdiction. On November 21, 2001, after a hearing, the District Court granted L.L. Bean's motion, finding that neither general nor specific jurisdiction existed. On December 21, 2001, Gator filed this timely appeal.

II.

 A district court's determination of whether personal jurisdiction exists is reviewed *de novo*. *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir.1990). The factual findings underlying the jurisdiction determination are reviewed for clear error. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). It is the plaintiff's burden to establish that a district court has jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.2001) (citation omitted). For purposes of a Motion to Dismiss, the plaintiff's version of the facts are assumed to be true unless directly controverted. *Id.* " '[C]onflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a

prima facie case for personal jurisdiction exists.'" *Id.* (quoting *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996)).

### III.

■ Since there is no applicable federal statute governing jurisdiction in the instant case, we apply the law of the state in which the district court sits, i.e., California. *Panavision,* 141 F.3d at 1320 (citing *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1484 (9th Cir.1993)). "California permits the exercise of personal jurisdiction to the full extent permitted by due process." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000).

The assertion of personal jurisdiction satisfies due process so long as there are "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

■ Personal jurisdiction may be either general or specific. *Panavision,* 141 F.3d at 1320. General jurisdiction exists when there are "substantial" or "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to those contacts. *Bancroft,* 223 F.3d at 1086 (citing *Helicopteros Nacionales de Colom-*bia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction may be asserted "if the case arises out of certain forum-related acts." *Id.* "Whether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment' ... [to] ensure[ ] that 'a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.2002) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (other citations omitted). The goal of the "purposeful availment" requirement is to give the corporation "clear notice that it is subject to suit [in the forum State]" so that it "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

■ We begin with an analysis of whether L.L. Bean's contacts with California were sufficient to confer general jurisdiction.[2] "The standard for establishing general jurisdiction is 'fairly high....'" *Bancroft,* 223 F.3d at 1086 (quoting *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986)). The contacts with the forum state must be of a sort that "approximate physical presence." *Id.* (citing *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984)); *but see Int'l Shoe,* 326 U.S. at 316–17, 66 S.Ct. 154 ("[T]he terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process."). "Factors to be

---

**2.** Because we hold that there is general jurisdiction in this case, we do not address whether specific jurisdiction is present on the basis of L.L. Bean's cease-and-desist letter.

taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086 (citing *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1478 (9th Cir.1986)). "We ... focus upon the 'economic reality' of the defendants' activities rather than a mechanical checklist." *Gates Learjet*, 743 F.2d at 1331. Even if substantial, or continuous and systematic, contacts exist, the assertion of general jurisdiction must be reasonable. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852–53 (9th Cir.1993).

## A. Substantial or Continuous and Systematic Contacts Test

In applying the "substantial" or "continuous and systematic" contacts test, courts have focused primarily on two areas. First, they look for some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (finding general jurisdiction when president of Phillipines-based corporation maintained office, kept company files, held director meetings, distributed salaries, and conducted other company business in the forum state). In addition, courts have looked at whether the company has engaged in active solicitation toward and participation in the state's markets, i.e., the economic reality of the defendant's activities in the state.[3]

In *Helicopteros*, the Supreme Court considered both of these factors and found no general jurisdiction in Texas. The case involved a defendant whose contacts consisted of sending its CEO to Houston for meetings, drawing checks on a Houston bank, and purchasing large quantities of helicopters and training for the helicopters from a Texas supplier. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. After noting the absence of traditional presence factors—an agent, license to do business, incorporation, or physical facilities—the Supreme Court also noted that the defendant "never ... performed ... operations in Texas or sold any product that reached Texas,[and] never solicited business in Texas." *Id.* at 411, 104 S.Ct. 1868.

No Supreme Court cases and only a handful of Ninth Circuit cases have addressed the issue of when and whether general jurisdiction may be asserted over a company that does business on the internet. The most relevant of our cases, *Bancroft*, held that the defendant's contacts were insufficient to confer general jurisdiction. In addition to not being registered or licensed to do business in California, the defendant in *Bancroft* did not pay taxes or maintain a bank account in California and "target[ed] no print, television, or radio advertising toward California." 223 F.3d at 1086. In addition, the court found that

---

**3.** *Compare Theo. H. Davies & Co. v. Republic of the Marshall Islands*, 174 F.3d 969, 974–75 (9th Cir.1998) (finding general jurisdiction over two foreign corporations engaged in substantial commercial activity in the United States, including purchase and solicitation of bids for generators in Hawaii), *with Gates Learjet*, 743 F.2d 1325, 1331 (finding no general jurisdiction where defendant solicited distributorship in state, made several visits to state, agreed to state choice of law and forum selection clauses in contract, purchased parts

from state, and sent numerous letters and telexes to state), *and Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868 (approving *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923), in which the Court found no general jurisdiction over "small retailer" from Oklahoma who "never regularly carried on business" in New York and whose "only connection with New York was [purchasing] ... a large portion of the merchandise [from New York wholesalers].").

the defendant's website was " 'passive,' i.e., consumers cannot use it to make purchases." *Id.* Finally, the court found that neither the defendant's "occasional, unsolicited sales of tournament tickets and merchandise to California residents" nor a few licensing agreements that the defendant had made with California vendors were sufficient to create general jurisdiction, as these contacts "constitute doing business with California, but do not constitute doing business in California." *Id.*[4]

■ Given the high standard the Ninth Circuit has set,[5] the presence of general jurisdiction in the instant case is a close question. Admittedly, L.L. Bean has few of the factors traditionally associated with physical presence, such as an official agent or incorporation. Nevertheless, we find that there is general jurisdiction in light of L.L. Bean's extensive marketing and sales in California, its extensive contacts with California vendors, and the fact that, as alleged by Gator, its website is clearly and deliberately structured to operate as a sophisticated virtual store in California.

First, L.L. Bean's overall commercial contacts with California meet the continuous and systematic contacts test applied in *Davies, Bancroft* and *Helicopteros.* The facts as alleged by Gator indicate that L.L. Bean meets the first set of factors set out in these cases: it makes sales, solicits business in the state, and serves the state's markets. *See Davies,* 174 F.3d at 975; *see also Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1447 (9th Cir.1991). In addition, unlike the defendant in *Bancroft,* Gator alleges that L.L. Bean "targets" its electronic advertising at California and maintains a highly interactive, as opposed to "passive," website from which very large numbers of California consumers regularly make purchases and interact with L.L. Bean sales representatives. *Cf. Bancroft,* 223 F.3d at 1086. Unlike the defendant in *Helicopteros,* L.L. Bean has not merely made a single "package" purchase from a forum vendor or cashed a check on a forum bank; instead, it ships very large numbers of products to California and maintains ongoing contacts with numerous California vendors. Nor are any of L.L. Bean's contacts occasional or infrequent. *See Gates Learjet,* 743 F.2d at 1331. L.L. Bean's contacts are part of a consistent, ongoing, and sophisticated sales effort that has included California for a number of years.

In short, even under the heightened standard applied to general jurisdiction, the "consistent and substantial pattern of business relations" represented by these facts is sufficient to confer general jurisdiction. *See Davies,* 174 F.3d at 975. There is nothing "random, fortuitous, or

---

**4.** Other Ninth Circuit cases explicitly considering the significance of exerting jurisdiction because of internet related contacts are not particularly instructive as the facts in each case involve considerably less contact than what was present in *Bancroft,* let alone the instant case. *Cybersell* involved jurisdiction over a Florida corporation which had directed "no commercial activity over the Internet in Arizona. All that [the defendant] did was post an essentially passive home page on the web...." *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997). The parties conceded that general jurisdiction did not exist. 130 F.3d at 416. *See also Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019

(9th Cir.2002) (addressing specific jurisdiction but not general jurisdiction issues). In *Panavision,* the Court dismissed the general jurisdiction question in a sentence, holding that the defendant's contact activity was not continuous and systematic where the defendant was domiciled in Illinois and his activity consisted only of registering domain names of major companies and then trying to sell the domains to those companies. 141 F.3d at 1320.

**5.** *See Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380–81 (9th Cir.1990) (collecting cases), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

attenuated" about subjecting L.L. Bean to the authority of the court as L.L. Bean has deliberately and purposefully availed itself, on a very large scale, of the benefits of doing business within the state. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987);[6] *accord Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 572 (2d Cir.1996) (noting that extensive mail order and telephone sales alone could support general jurisdiction if sufficiently "continuous and systematic."); *Mich. Nat'l Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 466 (6th Cir.1989) (finding pattern of continuous and systematic contacts sufficient for general jurisdiction given mail order solicitations to Michigan businesses and presence of at least one sale in Michigan every month for two years).[7]

■ Second, even if the only contacts L.L. Bean had with California were

through its virtual store, a finding of general jurisdiction in the instant case would be consistent with the "sliding scale" test that both our own and other circuits have applied to internet-based companies. *See, e.g., Cybersell,* 130 F.3d at 417–19. This test requires both that the party in question "clearly [do] business over the Internet," *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997),[8] and that the internet business contacts with the forum state be substantial or continuous and systematic. *See Revell v. Lidov,* 317 F.3d 467, 470–71 (5th Cir.2002); *accord Coastal Video Communications Corp. v. Staywell Corp.,* 59 F.Supp.2d 562, 571 (E.D.Va.1999). Recognizing that an online store can operate as the functional equivalent of a physical store, the test does not require an actual presence in the state. Rather, the nature of the commercial activity must be of a substantial enough nature that it "approximate[s] physical pres-

---

**6.** Discussing purposefully directed activity as potentially including "an intent or purpose to serve the market in the forum State," including "advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor ... in the forum State" or "creat[ing], control[ing], or employ[ing a] distribution system [to bring products to the forum State]." 480 U.S. at 112, 107 S.Ct. 1026.

**7.** Gator also points to the Supreme Court's decision in *Quill Corp. v. North Dakota* as supportive of its position. *Quill* involved a state's request for a declaratory judgment that an out-of-state mail-order company with no physical presence in the state had sufficient "minimum contacts" with the state to justify the imposition of a sales tax. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). Although the Court eventually concluded that the imposition of a tax would violate the "substantial nexus" requirement of the Commerce Clause, it also concluded, applying the reasoning of *International Shoe* and *Burger King,* that "the imposition of the collection duty on a mail-order

house that is engaged in continuous and widespread solicitation of business within a State [would not violate Due Process]." *Id.* at 308, 312, 112 S.Ct. 1904.

**8.** *Zippo* described the test as follows:

[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.... At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end ... a defendant has simply posted information on an Internet Web site which is accessible to [forum resident] users.... The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. *Zippo,* 952 F.Supp. at 1124 (citations omitted).

ence." *Bancroft*, 223 F.3d at 1086 (citing *Gates Learjet*, 743 F.2d at 1331).

Applying this test, the District of Columbia Circuit recently found general jurisdiction after finding that a defendant online brokerage firm was "through its website ... doing business in the District of Columbia" where customers could use the website to open accounts, transmit funds to those accounts electronically, use the accounts to buy and sell securities, and enter into binding contracts with the defendant. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 512–13 (D.C.Cir.2002) (citing *Zippo*, 952 F.Supp. at 1124); *see also Cybersell*, 130 F.3d at 417 (discussing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996), as a case finding general jurisdiction in Ohio where defendant knowingly used Ohio online computer service provider "as a distribution center to market his software."). The Fourth Circuit has also adopted the "sliding scale" test without explicitly applying it in the general jurisdiction context, noting that "something more" than systematic transmission of electronic signals would be required in order to assert general jurisdiction. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713–15 (4th Cir.2002); *see also Cybersell*, 130 F.3d at 418 (requiring, in the specific jurisdiction context, "something more" than "mere advertisement or solicitation ... on the Internet ... to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state").

Under the sliding-scale analysis, L.L. Bean's contacts with California are sufficient to confer general jurisdiction. L.L. Bean's website is highly interactive and very extensive: L.L. Bean "clearly does business over the Internet." *See Zippo*, 952 F.Supp. at 1124. Moreover, millions of dollars in sales, driven by an extensive, ongoing, and sophisticated sales effort in-

volving very large numbers of direct email solicitations and millions of catalog sales, qualifies as "substantial" or "continuous and systematic" commercial activity. *Accord Coastal Video*, 59 F.Supp.2d at 572 ("As with traditional business contacts, the most reliable indicator of the nature and extent of ... Internet contact with the forum state will be the amount of sales generated in the state by or through the interactive website."); *cf. Bancroft*, 223 F.3d at 1086 (rejecting general jurisdiction on basis of occasional, unsolicited sales of tournament tickets and merchandise to California residents); *Revell*, 317 F.3d at 471 (finding that, although "the maintenance of a website is, in a sense, a continuous presence everywhere in the world," the contacts of an online journal were not "substantial" because it received only 17 and then 18 subscriptions from forum state residents).

The District Court erred in concluding that there was no general jurisdiction in this case. We now proceed to consider whether assertion of general jurisdiction over L.L. Bean is reasonable.

## B. Reasonableness Test

 Even if there are sufficient contacts to support general jurisdiction in a particular case, it is still limited by a reasonableness analysis. *Amoco*, 1 F.3d at 851. The reasonableness test set out by *Amoco* is the same as the test for reasonableness in the specific jurisdiction context, requiring an analysis of seven factors:

> [T]he extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in

convenient and effective relief; and the existence of an alternative forum.

*Id.* (quoting *Shute,* 897 F.2d at 386). The burden is on the defendant to present a "compelling case" that the assertion of jurisdiction is not reasonable. *Id.* at 851–52. Although L.L. Bean did not specifically address the issue of reasonableness in the general jurisdiction context, with the exception of the "purposeful interjection" factor, its arguments in the specific jurisdiction context are germane since the same standard applies.

 L.L. Bean asserts that three of the above factors cut in its favor: the extent of purposeful interjection, the burden on L.L. Bean of litigating in California, and the availability of an alternative forum. L.L. Bean concedes that the remaining factors are either neutral or cut in Gator's favor.

In the general jurisdiction context, the purposeful interjection standard "parallels the question of minimum contacts." *Id.* at 852. As discussed above, there is substantial evidence that L.L. Bean has purposefully interjected itself into the California market. Even conceding that this may be a close case for general jurisdiction, this factor does not create a "compelling case" for unreasonableness. To the contrary, the extensive nature of L.L. Bean's interjection cuts in Gator's favor.

L.L. Bean also argues that defending this litigation would impose a substantial burden on it because its principal place of business and its corporate records and personnel are all located in Maine. This argument lends little support to L.L. Bean's case, given that it is a multi-million dollar company that concedes that its agents regularly do business around the country, including flying to California to meet with vendors. Nor does this case present issues whose disposition will rely on access to L.L. Bean's facilities or records. Moreover, the burden on Gator if it were forced to proceed in Maine would be at least equal to, if not more severe, than the burden faced by L.L. Bean. In short, L.L. Bean presents no evidence that the " 'inconvenience is so great as to constitute a deprivation of due process[.]' " *Panavision,* 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n,* 59 F.3d 126, 128–29 (9th Cir.1995)).

Finally, L.L. Bean asserts that because Gator has filed an almost identical declaratory action in the District Court of Oregon, Gator has failed to show that there is no alternative forum available. While this factor does cut in L.L. Bean's favor, it does not make assertion of jurisdiction unreasonable. We therefore find that L.L. Bean has not presented a compelling case that general jurisdiction is unreasonable.

### IV.

It is increasingly clear that modern businesses no longer require an actual physical presence in a state in order to engage in commercial activity there. With the advent of "e-commerce," businesses may set up shop, so to speak, without ever actually setting foot in the state where they intend to sell their wares. Our conceptions of jurisdiction must be flexible enough to respond to the realities of the modern marketplace. "As technological progress . . . increase[s] the flow of commerce between States, the need for jurisdiction over nonresidents [undergoes] a similar increase. . . . In response to these changes, the requirements for personal jurisdiction over nonresidents [evolve]." *Hanson v. Denckla,* 357 U.S. 235, 250–251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Businesses who structure their activities to take full advantage of the opportunities that virtual commerce offers can reasonably anticipate that these same activities will potentially subject them to suit in the locales that they have targeted.

We find that the facts as alleged by Gator demonstrate that L.L. Bean has substantial or continuous and systematic contacts with California sufficient to support a finding of general jurisdiction. The decision of the District Court is reversed and we remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**