**ARISTA RECORDS, INC,**
**et al., Plaintiffs,**

v.

**SAKFIELD HOLDING COMPANY**
**S.L., et al., Defendants.**

**No. CIV.A.03–1474(RCL).**

United States District Court,
District of Columbia.

April 22, 2004.

Steven B. Fabrizio, Donald Beaton Verrilli, Nicole G. Berner, Jenner & Block, LLC, Dean C. Garfield, Linda Jacqueline Zirkelbach, Recording Industry Association of America, Washington, DC, for Plaintiffs.

Ralph Louis Lotkin, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Defendant Sakfield Holding Company, S.L.'S second Motion to Dismiss Under Fed.R.Civ.P. 12(b)(2) and (3)[50]. Defendant renews its motion to dismiss filed on September 5, 2003 and again requests this Court dismiss this action for lack of personal jurisdiction and improper venue. The Court denied without prejudice defen-

dant Sakfield's first motion to dismiss and simultaneously granted a period of jurisdictional discovery. Mem. & Order (Oct. 30 2003)[38].Upon consideration defendant Sakfield's second motion to dismiss, the opposition thereto, the reply, the jurisdictional facts presented, and the applicable law in this case: the Court hereby denies defendant's second Motion to Dismiss.

## I. BACKGROUND

Plaintiffs filed their complaint on July 3, 2003. Plaintiffs are record companies in the United States and abroad claiming "copyright infringement, violations of the Lanham Act, unfair competition, and tortious interference," Compl. ¶ 1, against Defendant Sakfield Holding Company, S.L. ("Sakfield"), a "Spanish Company, organized under Spanish law, and located in Madrid, Spain," Def.'s First Mot. to Dismiss at 1, and against Does 1–10, "individuals or entities that own and/or control Sakfield, and/or are conspiring with Sakfield to engage in . . . unlawful activities," Compl. ¶ 18. Plaintiffs allege that defendant Sakfield owned and controlled a website located at www.puretunes.com ("Puretunes") and that this website allowed persons to download copyrighted musical works owned by plaintiffs without authorization.

Defendant Sakfield filed its first motion to dismiss on September 5, 2003. In that motion Sakfield asserted "[it] has no records or information indicating that it has transacted any business with any persons or entities in the District of Columbia. Sakfield does not have any information or records indicating that any person or entity in the District of Columbia downloaded anything from the puretunes.com website," Def.'s First Mot. to Dismiss at 1–2 (Sept. 5, 2003), and therefore neither general nor specific jurisdiction exists, Id. at 3 & 5. Sakfield also argued this case should be dismissed for improper venue, Id. at 7, forum non conveniens, Id. at 9, and comi-

ty, Id. at 12. In its second motion to dismiss, Sakfield "expressly incorporates by reference its factual and legal arguments as submitted in the initial Motion and its Reply." Second Mot. to Dismiss at 2 (Jan. 9, 2004). In its second motion, Sakfield reiterates that it is "unaware of any evidence—whether obtained prior to or during jurisdictional discovery—that would support the continued consideration of this case by this Court." Id. at 5.

Plaintiffs' complaint and opposition to the second motion to dismiss detail a belief that "Defendant Sakfield has entered into sales agreements over the Internet with residents of the District of Columbia," Compl. ¶ 11, and that "Sakfield derived revenue from its sales in the District." Id. Plaintiffs argue that jurisdiction is proper under the District of Columbia's long-arm statute, D.C.Code § 13–423(a) (1981) or D.C.Code § 13–334(a) (1981), Pls.' Opp'n to Def. Sakfield Holding Co. S.L.'s Mot. to Dismiss at 14 (Jan. 28, 2004) ("Pls.' Second Opp'n"), and that the assertion of such jurisdiction satisfies the constitutional minimum under the Due Process Clause. Id. at 14–15. Plaintiffs further assert that jurisdiction is proper under Fed.R.Civ.P. 4(k)(2). Id. at 19.

In response to defendants' first motion to dismiss the Court granted a period of jurisdictional discovery to allow plaintiffs an opportunity to discover facts sufficient to support the continued jurisdiction of this Court. As previously observed, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." El–Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C.Cir.1996). On the same day, the Court also granted plaintiffs' motion to

compel discovery.[1] The Court expected compliance with that Order to provide facts sufficient to resolve the jurisdictional dispute. But plaintiffs' opposition to the second motion to dismiss and defendant's reply make clear that defendant's discovery compliance is at issue. Thus the Court must also consider the extent to which any failure to comply with the Court's order compelling discovery impacts plaintiffs' ability to provide facts sufficient to establish jurisdiction. The period of jurisdictional discovery is now complete. Plaintiffs set forth the facts discovered in their opposition to the second motion to dismiss. It is to these facts that the Court now turns.

## II. ANALYSIS

■■ A plaintiff must establish a factual basis for the Court's exercise of personal jurisdiction over the defendant to withstand a motion to dismiss under Fed. R.Civ.P. 12(b)(2). *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C.Cir.1990). The plaintiff must allege specific facts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C.Cir.2001). The Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000). But the Court will resolve factual discrepancies in favor of the plaintiff. *Crane*, 894 F.2d at 456.

■■ There are two mechanisms for asserting personal jurisdiction in this case. First, D.C.Code § 13–423 provides for specific jurisdiction because plaintiffs' claim arises from defendant's "transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000). Second, D.C.Code § 13–334(a) provides for general jurisdiction over a defendant even if the claim at issue does not arise from the defendant's conduct in the District of Columbia where the defendant is "doing business" in the District. D.C.Code § 13–334(a). The test for general jurisdiction is whether defendant's contracts with the District were "continuous and systematic." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C.Cir.2002). Furthermore, the assertion of either specific or general jurisdiction must also meet the constitutional minimum required for due process. The requirements of due process "are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gorman*, 293 F.3d at 512 (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)) (additional internal quotation marks omitted). A court will find minimum contacts in any case where the defendant's conduct is such that "he should reasonably anticipate being haled into court" in the forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S.

---

**1.** The Court's Order, dated October 30, 2003, directed Sakfield: to "retrieve and produce all non-privileged documents responsive to Plaintiffs' Document Requests that are currently in the possession, custody or control of Sakfield's agents, consultants, or vendors," to "facilitate Plaintiffs' dealings with third parties respecting the subject matter of this action," to "authorize Bibit Global Payment Services to release to Plaintiffs information regarding the customers of the PureTunes website," or to "retrieve [from Bibit] all such documents and produce them to Plaintiffs forthwith." Order [40] at 1–2 (Oct. 30, 2003).

286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ Plaintiffs have met the requirements for specific jurisdiction. In order to download a music file a potential Puretunes user located in the District had to subscribe to the Puretunes service by filling out personal information, agree to a license agreement, download and install proprietary Puretunes software, and then download infringing music files through that software. In addition, any users desiring to obtain more than the initial 25 free songs available to new users would have conducted credit card transactions as part of their subscription to the Puretunes service.[2] *See* Pls.' Second Opp'n at 16 (citing Ex. 2 ¶¶ 12, 14, 16 ("Ward Decl.")). As evidence of a specific instance of defendant's transacting business plaintiffs offer the declaration of Jeff Henriksen, a resident of the District of Columbia, who downloaded music files from Puretunes. Ex. 16 to Pls.' Second Opp'n ("Henriksen Decl."). Henriksen admits to downloading music files from Puretunes pursuant to the process outlined above, but he did not make any purchases from Puretunes. Henriksen Decl. ¶¶ 3–6. A single act by defendant in the jurisdiction can be sufficient to constitute "transacting business," and thereby confer jurisdiction. *See Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C.App.1981) (en banc). Thus even without considering the evidence offered in the declaration of Bruce Ward the Court can find that the download of music files by Henriksen constitutes transacting business in the District. As the Court of Appeals in *Gorman* noted, the fact that the transactions between defendant and residents of the District of Columbia occurred in cyberspace "is not some mystical incantation capable of warding off the jurisdic-

tion of courts built from bricks and mortar." 293 F.3d at 510. *See also Material Supply Intern., Inc. v. Sunmatch Industrial Co.*, 62 F.Supp.2d 13 (D.D.C.1999) (noting that a single act may be sufficient to transact business and that defendant need not ever be physically present in the district to transact business within the meaning of the statute). All of the aforementioned acts represent transactions between a district resident and defendant that have given rise to consequences in the District. *See Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F.Supp.2d 47 (D.D.C. 1998) (holding that contractual activities that cause a consequence in the District are sufficient to constitute "transacting any business"). Furthermore, the records of credit card transactions held by Bibit Global Payment Services should provide further evidence of specific transactions with District residents.

■ Plaintiffs also assert that this Court can assert personal jurisdiction over defendant under D.C.Code § 13–334(a), which provides for general jurisdiction where a defendant is "doing business" in the District. The reach of the "doing business" jurisdiction under D.C.Code § 13–334(a) is coextensive with the reach of constitutional due process. *Gorman*, 293 F.3d at 510. The test to apply is the constitutional test of whether defendant's contacts were "continuous and systematic." *Id.* The fact that defendant's contacts occurred via the Internet does not alter the analysis or otherwise shield defendant. *See GTE New Media Services, Inc., v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.Cir.2000) ("We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held

---

**2.** It appears undisputed that the Puretunes website allowed a new user to subscribe to the Puretunes service and download 25 music files for free before agreeing to purchase music files from Puretunes via a paid subscription.

and inviolate principles of federal court jurisdiction.")

The D.C. Circuit Court of Appeals considered this issue closely in *Gorman*. The Court of Appeals considered whether general jurisdiction over a defendant existed as a result of its online brokerage website. The court identified several characteristics of the website that were evidence of "continuous and systematic" contacts with the District. The court noted that customers in the District could use defendant's website to engage in electronic transactions with the firm, including the ability to "open Ameritrade brokerage accounts online; transmit funds to their accounts electronically; and use those accounts to buy and sell securities, to borrow from Ameritrade on margin, and to pay Ameritrade brokerage commissions and interest." 293 F.3d at 512. The court found that such transactions were not the type of "essentially passive" interactions that occur when customers merely access a website for information, as in the case of *GTE New Media Servs. v. BellSouth Corp.*, but were instead "binding contracts." *Id.* at 512–13. The defendant was "doing business in the District of Columbia by continuously and systematically 'enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.'" *Id.* at 513 (*quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). *See also Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1081 (9th Cir.2003) (finding general jurisdiction over an online retailer on the grounds that "[b]usinesses who structure their activities to take full advantage of the opportunities that virtual commerce offers can reasonably anticipate that these same activities will potentially subject them to suit in the locales that they have targeted").

■ In this case plaintiffs have alleged from the outset that "Defendant Sakfield has entered into sales agreements over the Internet with residents of the District of Columbia," Compl. ¶ 11, and that "Sakfield derived revenue from its sales in the District". *Id.* They have alleged, and defendant does not deny, that the Puretunes website was accessible to persons in the District of Columbia, and that it was possible for persons located in the District to have downloaded music files. The Court finds as a matter of law that if sufficient District of Columbia residents did in fact access the Puretunes website and, after following the steps previously described, downloaded music files from the Puretunes website, that this constitutes continuous and systematic contacts with the District of Columbia in fulfillment of the requirements of constitutional due process and the District of Columbia long arm statute, D.C.Code 13–334(a). Defendant has purposefully directed its actions at the District and could reasonably anticipate being haled into court in the District as a consequence.

■ Furthermore the Court finds that it is not necessary for any District residents to have subscribed to any of the paid plans offered by Puretunes. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1260 (6th Cir.1996) (finding personal jurisdiction where defendant entered into a contract and then "deliberately and repeatedly sent shareware files to a computer in the forum state"); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996) (finding personal jurisdiction where defendant's website solicited users to sign up to receive more information about planned services even though the underlying service was not available yet). Puretunes allowed users to register for the service but then receive 25 free music files before the user had to pay for further downloads. Such a marketing technique is active solicitation. Whether or not defendant's advertising plan was targeted at District of Columbia residents specifically, by signing up Dis-

trict residents to this free trial period defendant entered a business relationship with District residents. The 24 hour availability of downloadable files and transfer of files to those customers in the District is exactly the sort of purposeful, active, systematic, and continuous activity in the District of Columbia that constitutes "doing business."

▪ The foregoing analysis still does not determine whether defendant was actually "doing business" in the District. That is, did Puretunes in fact have customers who resided in the District? To make that determination requires an "examination of the frequency and volume of the firm's transactions with District residents." *Gorman*, 293 F.3d at 513. The Court ordered jurisdictional discovery to establish precisely this point. The Court's grant of jurisdictional discovery was accompanied by an order compelling discovery. The order compelling discovery contained two categories that should have provided this Court with ample information regarding the grounds for personal jurisdiction. Specifically, paragraph 5 ordered defendant Sakfield to produce computer servers held by RACO, a third party service provider, to plaintiffs. The servers hosted the Puretunes website, the database of music files, and records of users who had accessed the website. But when plaintiffs' expert examined these servers he found that the vast majority of information stored therein had been intentionally destroyed. Ward Decl. ¶¶ 23–25.

Plaintiffs' expert determined that a program designed to erase electronically stored information had been run over 50 times from a remote location in an effort to erase all electronic information on the servers. Ward Decl. ¶ 22. Furthermore, defendant does not contest plaintiffs' further assertion that the deletion of files from the server took place *after* defendant's Internet Service Provider, Cogent Communications, Inc., informed defendant that plaintiff had made claims of copyright infringement against the owner of the Puretunes website. Pls.' Second Opp'n at 5. It was patently obvious to defendant that litigation was imminent and that the servers contained crucial factual evidence. In fact, the logical inference given the proximity in time of the deletion of files to the notification from Cogent Communications is that it was in response to the threat of imminent litigation that defendant destroyed substantial evidence of the alleged misdeeds. Moreover, defendant admits to deleting the files and that such deletion was purposeful. Defendant states: "by deleting files and the download-enabling software, Sakfield sought only to preclude further transmissions of copyrighted music." Def. Sakfield Holding Company S.L.'s Reply to Pls.' Opp'n to Mot. to Dismiss at 22 (Feb. 9, 2004). Defendant's argument that it destroyed crucial evidence to prevent further transfer of music files is without doubt one of the most ludicrous arguments ever visited upon this Court in written form. Defendant could have disconnected its website from the Internet in any number of ways without destroying one single file.[3] The Court will not at this time impose any particular sanctions as a result of these actions but

---

3. The law regarding such destruction of evidence is clear:

> While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

*Jeanblanc v. Oliver T. Carr Co.*, 1992 WL 189434, *2 (D.D.C.1992) (quoting *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443 (C.D.Cal.1984)).

instead grants plaintiffs the right to file appropriate motions for sanctions or otherwise in the future.

Plaintiffs' computer expert recovered a small amount of information from the computer servers despite defendant's attempts to destroy all the files. The information recovered showed partial lists of Puretunes users and a partial record of music file downloads. Using this information, plaintiff was able to extrapolate data showing that approximately 241 Puretunes users were located in the District of Columbia, Ward Decl. ¶ 33, and that these users downloaded approximately 20,000 music files from Puretunes. *Id.* ¶ 34. Defendants spend eight pages of their reply brief attacking the Ward Declaration and the methodologies used to determine that certain Puretunes users resided in the District of Columbia. Defendant claims that the information on the servers is not sufficient to determine that residents of the District downloaded music files or utilized the Puretunes service. But defendant is in a poor position to attack plaintiffs' evidence. But for defendant's destruction of crucial evidence on the servers, plaintiffs would not have had to resort to such methods of analysis. Destruction of evidence raises the presumption that disclosure of the materials would be damaging. *Synanon Church v. United States*, 820 F.2d 421 (D.C.Cir.1987) (citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350–51, 29 S.Ct. 370, 53 L.Ed. 530 (1909)); *see also Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*, 654 F.Supp. 1334, 1364 (D.D.C.1986) ("There is no question that when relevant documents are willfully destroyed by a party then that party is culpable and should be held responsible for the prejudice it has caused."). The Court finds the data plaintiff extracted from the computer servers more than sufficient to establish that defendant maintained continuous and systematic contacts with the District of Columbia by entering into hundreds of contractual relationships with District residents through the Puretunes website and enabling the transfer of music files into the District, pursuant to those arrangements.

The Court's order compelling discovery addressed discovery from Bibit Global Payment Services ("Bibit"). Bibit processed credit card transactions for purchases made on the Puretunes website. As such Bibit should possess payment records including name and address information of Puretunes users who made credit card purchases from locations in the United States and specifically in the District of Columbia. In the event that no residents of the District made credit card purchases from Puretunes, that too should be evident by examining Bibit's records. To this end the Court specifically ordered defendant to "authorize Bibit Global Payment Services to release to Plaintiffs information regarding the customers of the PureTunes website," or to "retrieve [from Bibit] all such documents and produce them to Plaintiffs forthwith." Order at 1–2 (Oct. 30, 2003). This order leaves no doubt that final responsibility for obtaining Bibit records lies with defendants. As is clear from the briefs of the parties, defendant has not complied and plaintiff does not have Bibit's records. Again, defendant cannot be heard to assert that it is "unaware of any evidence-whether obtained prior to or during jurisdictional discovery—that would support the continued consideration of this case by this Court," Second Mot. to Dismiss at 5, when defendant fails to produce the very records that would answer this question directly, even after being ordered to obtain and produce them by this Court. If the Bibit records did in fact show that this Court lacked jurisdiction the Court would expect that defendant would have either attached the records themselves or attached affidavits from Bibit to that effect to its motions. While this would not be compliance with the Court's order it would

at least have allowed the Court to evaluate the evidence directly. As a sanction for defendant's failure to comply with this Court's order compelling discovery, the Court infers that the Bibit records include transactions with District of Columbia residents that are sufficient to support a finding of continuous and systematic contacts with the District of Columbia.

The Court has considered defendant's arguments for improper venue but as the Court determined that personal jurisdiction exists, venue is proper under 28 U.S.C. 1391(c). Furthermore, the Court finds that defendant's arguments for dismissal based on *forum non conveniens,* and comity are without merit. The Court need not determine whether or not personal jurisdiction is proper Fed.R.Civ.P. 4(k)(2) as the Court has already determined that personal jurisdiction exists on other grounds.

### III. Conclusion

The Court finds that plaintiff has met its burden of establishing a factual basis for the Court's assertion of personal jurisdiction under D.C.Code § 13–423(a) and D.C.Code § 13–334(a) and has further met the due process requirements of the Constitution. Defendant, through its Puretunes website, has purposefully directed contacts with the District of Columbia. Defendant should reasonably have anticipated being haled into Court in the District of Columbia because it entered into contractual relationships with hundreds of District residents and commenced a stream of electronic transactions with those residents. Defendant's second motion to dismiss is therefore DENIED in its entirety.

SO ORDERED.